J. TIMOTHY NARDELL (SBN 184444)
tim@ncalegal.com
NARDELL CHITSAZ & ASSOCIATES LLP
999 Fifth Avenue, Suite 230
San Rafael, California 94901
Tel:   (415) 306-5560
Fax:   (415) 455-9482

JOHN P. MARGIOTTA (*pro hac vice* to be filed)
jmargiotta@fzlz.com
EMILY WEISS (*pro hac vice* to be filed)
eweiss@fzlz.com
FROSS ZELNICK LEHRMAN & ZISSU, P.C.
866 United Nations Plaza
New York, New York 10017
Tel:   (212) 813-5900
Fax:   (212) 813-5901

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARTIER INTERNATIONAL AG and CARTIER, a division of RICHEMONT NORTH AMERICA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> FANTASY JEWELS, MASSOUD TORABIAN, and DOES 1-10, <br><br> Defendants. | Case No. _____ <br><br> **COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

{F2047726.1 }

Plaintiffs Cartier International AG and Cartier, a division of Richemont North America, Inc. (together, "Cartier" or "Plaintiffs"), by their attorneys Fross Zelnick Lehrman & Zissu, P.C. and Nardell Chitsaz & Associates LLP, for their complaint against Defendants Fantasy Jewels, Massoud Torabian, and Does 1-10  (together, "Defendants"), allege as follows:

**NATURE OF THE ACTION**

1.     Cartier is one of the world's most renowned jewelry and luxury watch manufacturers.  For decades, Cartier jewelry has been highly regarded throughout the world as finely crafted works of art.

2.     All of the claims asserted herein arise out of and are based on Defendants' unlawful promotion, distribution, and sale of jewelry products that are imitations of Cartier's jewelry designs, designs that are protected under the copyright and trademark laws.  In some cases, Defendants' imitation jewelry is even engraved with the famous CARTIER mark, despite Defendants never having received authorization from Cartier, making such products counterfeits.

3.     Defendants are well aware of Cartier's intellectual property rights, but have chosen to blatantly disregard them and continue offering for sale counterfeit and/or infringing jewelry products.

4.     Defendants' actions, as further described herein, are causing immediate and irreparable harm to Cartier and its brand, and are also harming consumers.  To redress the harm being done to Cartier and to the public and to protect its exclusive rights, Cartier brings claims for trademark counterfeiting and infringement under Section 32(1) of the United States Trademark Act of 1946, as amended (the "Lanham Act"), 15 U.S.C. § 1114(1); unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); dilution and tarnishment of Cartier's trademarks under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); copyright infringement under the Copyright Act of 1976, 17 U.S.C. § 101, *et seq.*; unfair

competition under California State Law, Cal. Bus. & Prof. Code §§ 17200 *et seq*.; and dilution under California State Law, Cal. Bus. & Prof. Code §§ 14330 *et seq*. Cartier seeks injunctive and monetary relief.

## JURISDICTION AND VENUE

5.     The Court has jurisdiction under Section 501 of the Copyright Act, 17 U.S.C. § 501; under Section 39 of the Lanham Act, 15 U.S.C. § 1121; and under Sections 1331 and 1338(a) and (b) of the Judicial Code, 28 U.S.C. §§ 1331, 1338(a) & (b).  Supplemental jurisdiction exists over Plaintiffs' state law claim under Section 1367(a) of the Judicial Code, 28 U.S.C. § 1367(a).

6.     This Court has personal jurisdiction over Defendants because, on information and belief, (*a*) Defendant Fantasy Jewels' principal place of business is in this district, (*b*) Defendant Massoud Torabian is a domicile of California, and (*c*) the exercise of jurisdiction over Defendants is not inconsistent with the Constitution of California or the United States.  Cal. Code Civ. Proc. § 410.10.

7.     Venue is proper in this district pursuant to Section 1391(b) of the Judicial Code, 28 U.S.C. § 1391(b), because Defendants reside in this district and a substantial part of the events giving rise to the claims occurred in this district.

## INTRADISTRICT ASSIGNMENT

8.     Assignment on a district-wide basis is appropriate under Civil Local Rule 3-2(c) because this is an Intellectual Property Action.

## PARTIES

9.     Plaintiff Cartier International AG is a public limited company organized and existing under the laws of Switzerland, having a principal place of business at Hinterbergstrasse 22, 6312 Steinhausen, Switzerland.

10.     Plaintiff Cartier, a division of Richemont North America, Inc., is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 645 Fifth Avenue, New York, New York 10022.

1  Cartier, a division of Richemont North America, Inc., is the exclusive distributor of

2  Cartier brand products in the United States.

3       11.    For the purposes of this Complaint, except where specified, the

4  interests of Plaintiffs Cartier International AG and Cartier, a division of Richemont

5  North America, Inc. herein are as a practical matter identical, and they are herein

6  referred to individually and collectively as "Cartier."

7       12.    Upon information and belief, Defendant Fantasy Jewels is an

8  unincorporated entity with a principal place of business at 5800 Northgate Mall,

9  #11, San Rafael, California 94903.

10      13.    Upon information and belief, Defendant Massoud Torabian is an

11 individual residing in and a citizen of the State of California.  On information and

12 belief, Defendant Massoud Torabian is the owner of Defendant Fantasy Jewels.

13      14.    Upon information and belief, Defendants Does 1-10 are as-yet

14 unidentified entities advertising, promoting, manufacturing, offering for sale and/or

15 selling goods that infringe on Plaintiffs trademarks and/or copyrights, and assisting

16 Defendants in doing so.

17                  **FACTS COMMON TO ALL CLAIMS**

18 **I.    CARTIER'S BUSINESS AND INTELLECTUAL PROPERTY RIGHTS**

19      A.    The Cartier Brand and Business

20      15.    Cartier is a world-famous supplier of fine jewelry and luxury watches

21 sold under the CARTIER name and mark.

22      16.    Founded in 1847 by Louis-François Cartier, Cartier has built a

23 reputation for fine craftsmanship in the jewelry field.  Through over 160 years of

24 use, Cartier has built its CARTIER name and mark to be synonymous with high-

25 quality, well-crafted jewelry.  Today, the company offers for sale and sells a wide

26 range of products, including timepieces, fine jewelry, and accessories.  Cartier's

27

28

1  commitment to innovation in design and function, as well as the use of only the

2  finest materials, has brought it renown as a leading maker of luxury goods.

3      17.    Among Cartier's most important assets is the intellectual property

4  associated with its brand. Among other protection, Cartier owns U.S. copyright

5  registrations covering many of its innovative jewelry designs and U.S. trademark

6  registrations covering many of its world-famous marks.

7      B.    The CARTIER Mark

8      18.    Among the trademarks owned and used by Cartier is the world-famous

9  CARTIER trademark, which has been used continuously in the United States in

10 connection with the advertising and sale of fine jewelry and watches since at least as

11 early as 1859.

12     19.    The CARTIER trademark is the subject of numerous federal trademark

13 registration, including, but not limited to, the following:

14

| *Mark* | *Reg. No.* | *Reg. Date* | *Registered Goods* |
|--------|-----------|-------------|--------------------|
| CARTIER | 411,239* | January 9, 1945 | *Inter alia*, bracelets, earrings, finger rings |
| CARTIER | 759,202* | October 29, 1963 | *Inter alia*, articles of jewelry for personal wear |
| *Cartier* | 411,240* | January 9, 1945 | Articles of jewelry for personal wear, namely, *inter alia*, bracelets, earrings, finger rings |
| *Cartier* | 4,178,047 | July 24, 2012 | *Inter alia*, jewelry |

22     20.    Printouts detailing the registration information for the above marks are

23 attached hereto as Exhibit A.  These registrations are all valid, subsisting, and in full

24 force and effect.  Moreover, the registrations identified above with an asterisk have

25 become incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065, and

26 serve as conclusive evidence of the validity of the registered marks, of the

27 registration of the marks, and of Cartier's exclusive right to use the marks in

28

{F2047726.1 }

-4-

commerce on or in connection with the products for which the marks are registered, as provided by Section 33(b) of the Lanham Act, 15 U.S.C. § 1115(b).

     C.   <u>Cartier's LOVE Collection and Related Intellectual Property Rights</u>

21.   One of Cartier's most well-known and sought-after jewelry lines is known as the LOVE collection, which consists of a wide variety of jewelry products, each with the distinctive appearance of a flat metal band in white gold, yellow gold, or pink gold punctuated by simulated screw head designs and/or diamonds (the "LOVE Trade Dress"), as shown below:



22.   The first item in the LOVE collection was the LOVE bracelet, designed for Cartier by Aldo Cipullo in 1969.

23.   Since its introduction, the LOVE bracelet has adorned the wrists of many famous celebrities, including 1970s couples such as Elizabeth Taylor and Richard Burton, Nancy and Frank Sinatra, Cary Grant and Dyan Cannon, and Ali McGraw and Steve McQueen.  Today, the LOVE bracelet continues to be favored by celebrities such as Kylie Jenner

24.   In addition to the LOVE bracelet, Cartier manufactures, promotes and sells a number of jewelry designs within the LOVE collection and incorporating the LOVE Trade Dress, including, but not limited to, earrings, rings, and necklaces.

25.   The LOVE word mark and the LOVE Trade Dress are the subjects of various federal trademark registrations owned by Cartier, including the following:

| *Mark* | *Reg. No.* | *Reg. Date* | *Registered Goods* |
|---|---|---|---|
| LOVE BRACELET | 1,005,286 | February 25, 1975 | Jewelry, namely, bracelets |

| Mark | Reg. No. | Reg. Date | Registered Goods |
|---|---|---|---|
|  | 1,372,423 | November 26, 1985 | Bracelets |
|  | 3,162,410 | October 24, 2006 | Jewelry, namely, *inter alia*, bracelets, rings, earrings |
|  | 3,776,794 | April 20, 2010 | Jewelry, namely, *inter alia*, rings, bracelets, earrings, made of previous metals |

26.     Printouts detailing the registration information for the above marks are attached hereto as Exhibit B.  These registrations are all valid, subsisting, and in full force and effect.  Moreover, all of the above registrations have become incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065, and serve as conclusive evidence of the validity of the registered marks, of the registration of the marks, and of Cartier's exclusive right to use the marks in commerce on or in connection with the products for which the marks are registered, as provided by Section 33(b) of the Lanham Act, 15 U.S.C. § 1115(b).  Collectively, the marks shown in Exhibits A and B are herein referred to as the "CARTIER Marks."

27.     Cartier has extensively advertised and promoted the products manufactured, sold, and offered for sale under the CARTIER Marks.  The CARTIER Marks immediately indicate Cartier as the exclusive source of products to which they are affixed, and signify goodwill of incalculable value.

28.     Cartier's products sold under the CARTIER Marks are available throughout the United States, both through Cartier's own boutiques and in additional authorized retail stores.  Cartier sells millions of dollars of products under the CARTIER Marks each year.

29.     The products distributed by Cartier under the CARTIER Marks are of the highest quality and are subject to exacting quality control standards.  Cartier takes pains to ensure the quality of its products by monitoring their production and

distribution.  As a result of these efforts, Cartier has developed a reputation for providing the highest-quality products under the CARTIER Marks and consumers have come to expect that products bearing the CARTIER Marks are of the highest quality and workmanship.

30.    Cartier also has expended large sums of money in advertising and promoting to the trade and to the public the CARTIER Marks and the products sold under those marks.

31.    Through Cartier's significant investment of time, money, and effort, widespread sales, and the high quality of Cartier products sold under or in connection with its CARTIER Marks, the CARTIER Marks have acquired enormous value and have become extremely well known to the consuming public and trade as identifying and distinguishing the source of Cartier's products exclusively and uniquely.  As a result of the great public acceptance of Cartier's products, the CARTIER Marks have come to represent enormous goodwill and the CARTIER word marks are famous throughout the United States.

D.    <u>Cartier's Juste un Clou Collection and Related Intellectual Property Rights</u>

32.    One of Cartier's most critically acclaimed lines is its Juste un Clou collection, which today comprises bracelets, rings, necklaces, and earrings featuring a circular design in the shape of a nail (collectively, the "Juste un Clou Works").

33.    The first item in the Juste un Clou collection was a bracelet designed by Aldo Cipullo, which was introduced in 1971 and offered for sale for a period of time thereafter.  In the Spring of 2012, the Juste un Clou collection was re-launched, this time comprising both bracelets and other jewelry.  Examples of a Juste un Clou bracelet and ring are shown below:

{F2047726.1 }

COMPLAINT

1
2
3
4
5
6
7
8

 

       i.   *Cartier International AG's Copyright in the Juste un Clou Works*

      34.    Plaintiff Cartier International AG owns, by assignment, a U.S. copyright in the Juste un Clou bracelet, U.S. Copyright Registration No. GP 83,787 (the "Juste un Clou Copyright").  A true and correct copy of the registration and the assignment of such registration to Plaintiff Cartier International AG is attached as Exhibit C.

      ii.   *Cartier's U.S. Trade Dress in the Juste un Clou Works*

      35.    The jewelry in Cartier's Juste un Clou collection incorporates a distinctive design composed of a unique combination of elements that collectively create a particular trade dress that is characteristic of Cartier's Juste un Clou collection (the "Juste un Clou Trade Dress").

      36.    The Juste un Clou Trade Dress consists of a nail design comprising:

      1.    a perfectly round head;

      2.    a tubular body;

      3.    having grooves underneath the head;

      4.    ending in a point that is preceded by four flat surfaces; and

      5.    curved in a circular formation with a slight overlap of the nail's head and point.

{F2047726.1 }

COMPLAINT

37.   Cartier has made widespread and exclusive use of the iconic Juste un Clou Trade Dress.  Cartier has invested a considerable amount of time, effort, and money advertising and promoting its jewelry products bearing the Juste un Clou Trade Dress and has enjoyed enormous success selling such products in the United States and around the world.  Products bearing the Juste un Clou Trade Dress have received extensive unsolicited media coverage due to their innovative and distinctive design.

38.   By virtue of extensive sales, advertising, and promotion, the Juste un Clou Trade Dress has become instantly recognizable to the public as exclusively denoting Cartier and signaling the high quality of its products.  As such, the Juste un Clou Trade Dress has obtained secondary meaning and is an enormously valuable asset of Cartier.

39.   The Juste un Clou Trade Dress is inherently distinctive and is in no way functional.

II.   **DEFENDANTS' UNLAWFUL ACTIVITIES**

40.   Defendants are in the business of offering for sale and selling jewelry and other accessories.  They operate the Fantasy Jewels jewelry store in the Northgate Mall in San Rafael, California.

41.   On information and belief, Defendants have manufactured, advertised, offered for sale, sold, distributed, imported, and/or exported bracelets, rings, and earrings bearing the LOVE Trade Dress and the CARTIER Marks.

42.   On information and belief, Defendants have manufactured, advertised, offered for sale, sold, distributed, imported, and/or exported bracelets and rings that bear the Juste un Clou Trade Dress and are substantially similar to the Juste un Clou Works.

43.   On January 6, 2016, Cartier's agent visited Defendants' store in the Northgate Mall.  Cartier's agent observed various counterfeit and/or infringing

1  bracelets, rings, and earrings bearing the LOVE Trade Dress and the CARTIER

2  Marks, photographs of which are attached as <u>Exhibit D</u>.   Defendant Massoud

3  Torabian informed Cartier's agent that these jewelry items were "good quality, but

4  they are not the real Cartier."

5      44.    Cartier's agent purchased from Defendants one of the counterfeit

6  LOVE bracelets, which was engraved with the CARTIER script mark on the inside.

7  Photographs of the counterfeit LOVE bracelet purchased by Cartier's agent are

8  shown below:

 



19      45.    Cartier's agent paid $161.14 for the counterfeit LOVE bracelet.  As

20  Defendant Massoud Torabian acknowledged to Cartier's agent, genuine LOVE

21  bracelets bearing the LOVE Trade Dress and the CARTIER Marks cost significantly

22  more.

23      46.    On June 9, 2016, Cartier's agent again visited Defendants' Fantasy

24  Jewels store and once more observed counterfeit and/or infringing jewelry products,

25  namely (*a*) bracelets and rings bearing the LOVE Trade Dress and the CARTIER

26  Marks, and (*b*) rings bearing the Juste un Clou Trade Dress and which are

27  substantially similar to the Juste un Clou Works.  Attached as <u>Exhibit E</u> are

28

{F2047726.1 }

1    photographs of the counterfeit and/or infringing jewelry products observed by

2    Cartier's agent during the June 9 visit to Defendants' store.

3         47.    Upon information and belief, such activities are being done willfully,

4    with the knowledge that such jewelry is copied from, and/or based upon, Cartier's

5    LOVE and Juste un Clou bracelets, rings, and earrings.  Not only has Defendant

6    Massoud Torabian admitted that the jewelry items that Defendants sell are not

7    genuine Cartier products, as set forth above, but Defendants have actual knowledge

8    of Cartier's rights.

9         48.    On July 27, 2016, Cartier's agent personally delivered to Defendant

10   Massoud Torabian a cease-and-desist letter requesting that Defendants immediately

11   cease their unlawful activities and voluntarily surrender to Cartier's agent the

12   counterfeit and/or infringing jewelry products.  Defendant Massoud Torabian

13   refused to surrender the jewelry products, and he has not otherwise responded to

14   Cartier's cease-and-desist letter.

15        49.    During the July 27 visit to Defendants' Fantasy Jewels store, Cartier's

16   agent again observed imitation Cartier and Juste un Clou jewelry products.

17   Attached as Exhibit F are photographs of these imitation pieces.

18        50.    Notwithstanding the fact that Defendants are on actual notice of

19   Cartier's exclusive rights, Defendants have, upon information and belief, continued

20   to advertise, distribute, offer for sale, and sell counterfeit and/or infringing products

21   (*a*) bearing the LOVE Trade Dress and the CARTIER Marks, and (*b*) bearing the

22   Juste un Clou Trade Dress and which are substantially similar to the Juste un Clou

23   Works.

24        51.    Upon information and belief, Defendants have shown, offered for sale,

25   and sold counterfeit CARTIER LOVE bracelets and imitation Juste un Clou

26   bracelets to customers other than Cartier's agent.

27

28

{F2047726.1 }

COMPLAINT

52.     Defendants are not related to or affiliated with Cartier in any way.  No Defendant in this action has sought or received a license or authorization from Cartier for any purpose whatsoever, including for the acts described herein.

53.     Defendants' counterfeit and/or infringing jewelry products directly compete with Cartier's products.

54.     Defendants' sale of counterfeit and/or infringing jewelry products unlawfully wrests from Cartier control over its reputation and, upon information and belief, is unjustly enriching Defendants.

55.     Upon information and belief, Defendants know, and at all relevant times knew, that the products they are selling are unlawful imitations of Cartier's jewelry products, and they advertise them as such.

56.     Upon information and belief, Defendants' activity described herein is intentionally fraudulent, malicious, willful, and wanton.

57.     Defendants' unauthorized acts as described herein have caused and will continue to cause irreparable damage to Cartier and its business and goodwill unless restrained by this Court.

**FIRST CLAIM FOR RELIEF BY ALL PLAINTIFFS**

**Trademark Counterfeiting and Infringement**

**Under Section 32 of the Lanham Act**

58.     Plaintiffs repeat and incorporate herein by reference each of the foregoing allegations.

59.     The CARTIER Marks are distinctive and of incalculable value, and are associated in the public mind with Plaintiffs' goods and services of the highest quality.

60.     Without Plaintiffs' authorization or license, and, upon information and belief, with knowledge of Plaintiffs' prior rights in the CARTIER Marks, Defendants have manufactured, advertised, offered for sale, sold, distributed,

1   imported, and/or exported counterfeit CARTIER LOVE jewelry earrings under

2   and/or bearing the following CARTIER Marks, or marks highly similar thereto:  the

3   CARTIER word mark, U.S. Registration No. 411,239; the CARTIER word mark

4   U.S. Registration No. 759,202; the stylized CARTIER word mark, U.S. Registration

5   No. 411,240; the stylized CARTIER word mark, U.S. Registration No. 4,178,047;

6   the trade dress in the screw head design, U.S. Registration No. 3,162,410; the trade

7   dress in the LOVE bracelet, U.S. Registration No. 1,372,423; and the trade dress in

8   the LOVE bracelet, U.S. Registration No. 3,776,794.

9   61.   Upon information and belief, by virtue of Cartier's extensive and

10   ongoing use and advertising of the CARTIER Marks, Defendants were on actual

11   notice of Cartier's exclusive rights in the CARTIER Marks.  In addition, Cartier's

12   federal registrations put Defendants on constructive notice of Cartier's exclusive

13   rights in the CARTIER Marks.

14   62.   Plaintiffs' manufacturing, advertisement, offering for sale, sale,

15   distribution, import, and/or export of counterfeit CARTIER LOVE products under

16   and/or bearing trademarks and trade dress that are identical or highly similar to the

17   CARTIER Marks is likely to cause confusion, mistake, or deception as to the source

18   or sponsorship of Defendants' goods.  As a result of Defendants' unauthorized use

19   of Plaintiffs' federally registered trademarks, and/or trademarks and trade dress that

20   are identical or highly similar to Plaintiffs' federally registered trademarks, the

21   public is likely to believe that Defendants' goods have been manufactured and/or

22   approved by Plaintiffs.  Such use falsely represents Defendants as being legitimately

23   connected with and/or authorized by Plaintiffs, and places beyond Plaintiffs' control

24   their own reputation and ability to control the use of the CARTIER Marks and the

25   quality of the products bearing those marks.

26

27

28

{F2047726.1 }

COMPLAINT

63.     Defendants' infringement of the CARTIER Marks is willful, intended to reap the benefit of the goodwill of Plaintiffs, and violates Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

64.     Defendants' aforesaid conduct has caused, and unless enjoined by this Court, will continue to cause, Plaintiffs to sustain irreparable damage, loss and injury, for which Plaintiffs have no adequate remedy at law.

## SECOND CLAIM FOR RELIEF BY ALL PLAINTIFFS
## Unfair Competition Under Section 43(a) of the Lanham Act

65.     Plaintiffs repeat and incorporate herein by reference each of the foregoing allegations.

66.     The CARTIER Marks are distinctive and of incalculable value, and are associated in the public mind with Plaintiffs and goods and services of the highest quality.

67.     Without Plaintiffs' authorization or license and, upon information and belief, with knowledge of Plaintiffs' prior rights in the LOVE Trade Dress and the CARTIER Marks, Defendants manufactured, advertised, offered for sale, sold, distributed, imported, and/or exported counterfeit and/or infringing products under and/or bearing the LOVE Trade Dress and the CARTIER Marks.

68.     The Juste un Clou Trade Dress is used in commerce, is non-functional, is inherently distinctive, and has acquired secondary meaning as the indicator of Cartier as the exclusive source of products containing or incorporating such design.

69.     Defendants have adopted the Juste un Clou Trade Dress and have, without Cartier's authorization or consent, manufactured, advertised, offered for sale, sold, distributed, imported, and/or exported jewelry designs that contain or incorporate the Juste un Clou Trade Dress or designs that are confusingly similar thereto.

70.    Defendants' conduct is likely to cause confusion, cause mistake, and/or deceive as to the affiliation, connection, or association between Defendants and Cartier, and/or as to Cartier's sponsorship or approval of Defendants' goods, services, and/or commercial activities.

71.    As a result of the foregoing, Defendants have falsely designated the origin of their products, all in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

72.    Upon information and belief, Defendants' aforesaid conduct has been undertaken knowingly, willfully, and in bad faith.

73.    Defendants' aforesaid conduct has caused, and unless enjoined by this Court, will continue to cause, Plaintiffs to sustain irreparable damage, loss, and injury, for which Plaintiffs have no adequate remedy at law.

**THIRD CLAIM FOR RELIEF BY ALL PLAINTIFFS**

**Trademark Dilution Under Section 43(A) of the Lanham Act**

74.    Plaintiffs repeat and incorporate herein by reference each of the foregoing allegations.

75.    Plaintiffs' CARTIER word marks are distinctive, federally registered trademarks.  As a result of their extensive and exclusive use of the CARTIER word marks in connection with their products, the CARTIER word marks have become famous and are widely recognized among the consuming public as a designation of source of Plaintiffs' goods.  The CARTIER word marks became famous long before Defendants' infringing activities commenced.

76.    Defendants' commercial use of marks identical to the CARTIER word marks for goods that are not manufactured or controlled by, affiliated with, or sponsored by Plaintiffs has diluted and is continuing to dilute the distinctive quality of Plaintiffs' CARTIER word marks by lessening the capacity of those marks to exclusively identify and distinguish Plaintiffs and their goods, and by tarnishing

{F2047726.1 }

-15-

1  them through association with Defendants' goods, which are of poor quality and
2  workmanship.

3       77.    Upon information and belief, the foregoing acts were done willfully
4  and deliberately and with an intent to dilute the distinctiveness of Plaintiffs'
5  CARTIER word marks in violation of Section 43(c) of the Lanham Act, 15 U.S.C.
6  § 1125(c).

7       78.    Defendants' aforesaid conduct has caused, and unless enjoined by this
8  Court, will continue to cause, Plaintiffs to sustain irreparable damage, loss and
9  injury, for which Plaintiffs have no adequate remedy at law.

10              **FOURTH CLAIM FOR RELIEF BY**
11          **PLAINTIFF CARTIER INTERNATIONAL AG**
12    **Copyright Infringement Under Section 501 of the Copyright Act**

13      79.    Plaintiff Cartier International AG repeats and incorporates herein by
14  reference each of the foregoing allegations.

15      80.    The Juste un Clou Works are original and creative works of Cartier
16  International AG and its predecessors-in-interest.  Cartier International AG is the
17  owner of the Juste un Clou Works and the exclusive owner of the Juste un Clou
18  Copyright.

19      81.    Defendants, without Cartier International AG's authorization or
20  consent, have manufactured, imported, displayed, advertised, reproduced,
21  distributed, exported, offered for sale, and/or sold jewelry products incorporating
22  designs that were copied from and are substantially similar in overall appearance to
23  the Juste un Clou Works.

24      82.    Defendants thereby have violated and, upon information and belief,
25  continue to violate, Cartier International AG's exclusive rights in the Juste un Clou
26  Works and the Juste un Clou Copyright under Section 106 of the Copyright Act, 17
27  U.S.C. § 106, in violation of Section 501 of the Copyright Act, 17 U.S.C. § 501.

28

83.    Upon information and belief, Defendants' aforesaid conduct has been undertaken knowingly, willfully, and in bad faith.

84.    Defendants' infringement of Cartier International AG's exclusive rights in its works has caused Cartier International AG damage, and has enabled Defendants to profit illegally therefrom.

85.    Defendants' copyright infringement has caused, and unless enjoined by this Court, will continue to cause, Cartier International AG to sustain irreparable damage, loss, and injury, for which Cartier International AG has no adequate remedy at law.

## FIFTH CLAIM FOR RELIEF
### Unfair Competition Under California Law
### (Cal. Bus. & Prof. Code §§ 17200 *et seq.*)

86.    Plaintiffs repeat and incorporate herein by reference each of the foregoing allegations.

87.    The aforesaid conduct of Defendants—trademark counterfeiting and infringement, unfair competition, and dilution—constitutes unfair competition in violation of Cal. Bus. & Prof. Code §§ 17200 *et seq.*

88.    Defendants' aforesaid conduct has caused, and unless enjoined by this Court, will continue to cause, Plaintiffs to sustain irreparable damage, loss and injury, for which Plaintiffs have no adequate remedy at law.

## SIXTH CLAIM FOR RELIEF
### Dilution Under California Law
### (Cal. Bus. & Prof. Code §§ 14330 *et seq.*)

89.    Plaintiffs repeat and incorporate herein by reference each of the foregoing allegations.

90.    Through Plaintiffs' significant investment of time, money, and effort, widespread sales, and the high quality of Cartier products sold under or in

1  connection with its CARTIER word mark, Plaintiffs have acquired strong common

2  law rights in the CARTIER word mark.

3      91.    Plaintiffs' have acquired common law rights in the CARTIER word

4  mark long before the acts of the Defendants complained of herein.

5      92.    Defendants' use of the CARTIER word mark as alleged above is likely

6  to dilute the distinctive quality of the CARTIER word mark, within the meaning of

7  Cal. Bus. & Prof. Code § 14330.

8      93.    Defendants' aforesaid conduct has caused, and unless enjoined by this

9  Court, will continue to cause, Plaintiffs to sustain irreparable damage, loss and

10  injury, for which Plaintiffs have no adequate remedy at law.

11                    **JURY TRIAL DEMAND**

12      94.    Plaintiffs demand a trial by jury on all issues so triable.

13      **WHEREFORE**, Plaintiffs demand judgment as follows:

14      1.    Entering judgment for Plaintiffs on each of their claims.

15      2.    Directing that Defendants and, where applicable, their officers,

16  directors, agents, representatives, employees, successors, or assigns, and all persons

17  acting in concert or in participation with any of them, be immediately and

18  permanently enjoined from:

19          a)    using any of Plaintiffs' trademarks or trade dresses, including but

20  not limited to those identified in the Complaint above, or any simulation, reproduction,

21  copy, colorable imitation, or confusingly similar variation of any of Plaintiffs'

22  trademarks or trade dresses in or as part of any design or logo or otherwise on or in

23  connection with any goods or on or in connection with the importation, promotion,

24  advertisement, sale, offering for sale, manufacture, production, dissemination, or

25  distribution of any goods;

26          b)    infringing the Juste un Clou Copyright, including, without

27  limitation, by manufacturing, reproducing, importing, distributing, displaying,

28

{F2047726.1 }

-18-

COMPLAINT

advertising, promoting, offering for sale, selling, distributing, importing, or exporting any of the Juste un Clou Works or any other designs copied or derived from the Juste un Clou Works;

c)    using any false designation of origin or false description or performing any act that can or is likely to lead members of the trade or public to believe that Defendants are associated with Cartier or that any product manufactured, distributed, advertised, displayed, promoted, offered for sale, sold, imported, or exported by Defendants is in any manner associated or connected with Cartier, is a genuine product of Cartier, or is authorized, licensed, sponsored, or otherwise approved by Cartier;

d)    engaging in any other activity constituting unfair competition with Plaintiffs, or constituting an infringement of Plaintiffs' trademarks, trade dresses, trade names, or copyrights;

e)    engaging in any activity that dilutes or tarnishes, or is likely to dilute or tarnish, any of Plaintiffs' trademarks, trade dresses, or trade names; and

f)    assisting or authorizing any third party to engage in any of the actions prohibited by subparagraphs (a)-(e) above, inclusive.

3.    Directing that Defendants turn over to Plaintiffs for impoundment and eventual destruction, without compensation to Defendants, all materials in their possession or control that violate the provisions of paragraphs 1(a)-(c) above, along with all articles by means of which such unauthorized copies may be reproduced.

4.    Directing that Defendants, at their own expense, recall from any distributors, retailers, vendors, or others to whom they have distributed materials that violate the provisions of paragraph 1(a)-(c) above, and that Defendants deliver up to Plaintiffs for destruction all materials returned to them.

5.    Directing that Defendants provide Plaintiffs with the names, addresses, and all other contact information in their possession (*e.g.*, telephone numbers, fax

{F2047726.1 }

-19-

1   numbers) for the sources of all products that bear or include counterfeits or copies of

2   any of Plaintiffs' trademarks, trade dresses, or copyrights or that otherwise are

3   intended to copy Plaintiffs' products, including all manufacturers, distributors,

4   and/or suppliers.

5       6.      Directing that Defendants, pursuant to 15 U.S.C. § 1116(a), file with

6   the Court and serve upon Plaintiffs, within thirty (30) days of the entry of injunction

7   prayed for herein, a written report under oath or affirmed under penalty of perjury

8   setting forth in detail the form and manner in which they have complied with the

9   permanent injunction.

10      7.      Granting Plaintiffs all damages sustained as a result of Defendants'

11  unlawful activities described above, together with appropriate interest thereon and,

12  in connection with Plaintiffs' claims under the Lanham Act, that such sums be

13  trebled or, if Plaintiffs elect, statutory damages as the Court considers just, of up to

14  $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale,

15  or distributed, as provided by 15 U.S.C. § 1117(b) & (c); and/or in connection with

16  Cartier International AG's  claims under copyright, statutory damages as Cartier

17  International AG may elect, as provided by 17 U.S.C. § 504(c).

18      8.      Granting Plaintiffs all the gains, profits, savings, and advantages

19  realized by Defendants from their unlawful actions described above and, in

20  connection with Plaintiffs' claims under the Lanham Act, that such sums be tripled.

21      9.      Granting Plaintiffs punitive damages.

22      10.     Granting Plaintiffs their full costs, including, as part of such costs,

23  reasonable attorneys' fees pursuant to 15 U.S.C. § 1117 and/or 17 U.S.C. § 505.

24      11.     Granting Plaintiffs both pre-judgment and post-judgment interest on

25  each and every monetary award.

26

27

28

{F2047726.1 }

COMPLAINT

1    12.    Granting Plaintiffs such other and further relief as the Court may

2  consider equitable, just, and proper

3  Dated:  September 15, 2016        NARDELL CHITSAZ & ASSOCIATES LLP

4
5                                    By: _____/s/_____
                                         J. Timothy Nardell
6                                    999 Fifth Avenue, Suite 230
                                     San Rafael, California 94901
7                                    Tel:   (415) 306-5560
                                     Fax:  (415) 455-9482
8                                    Email:  tim@ncalegal.com

9                                    John P. Margiotta (*pro hac vice to be filed*)
                                     Emily Weiss (*pro hac vice to be filed*)
10                                   FROSS ZELNICK LEHRMAN & ZISSU, P.C.
                                     866 United Nations Plaza
11                                   New York, New York 10017
                                     Tel:   (212) 813-5900
12                                   Fax:  (212) 813-5901
                                     Email:  jmargiotta@fzlz.com
13                                           eweiss@fzlz.com

14                                   Attorneys *for Plaintiffs*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

{F2047726.1 }

-21-

COMPLAINT